Ernest ALEXANDER et al.

v.

The UNITED STATES.

No. 573–80C.

United States Claims Court.

Jan. 6, 1983.

Motion for Relief from Judgment Denied
Jan. 26, 1983.

**654**

Charles Herring, Jr., Austin, Tex., for plaintiffs. Small, Craig & Werkenthin, Austin, Tex., of counsel.

Robert A. Reutershan, Washington, D.C., with whom was Asst. Atty. Gen. J. Paul McGrath, for defendant. M. Christopher Ludtke, Asst. Regional Counsel, U.S. Customs Service, Houston, Tex., of counsel.

ON PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND DEFENDANT'S CROSS–MOTION FOR SUMMARY JUDGMENT AND MOTION FOR PARTIAL DISMISSAL

OPINION

WHITE, Senior Judge.

The plaintiffs are 12 employees of the United States Customs Service within the Department of the Treasury. They are all residents of Bexar County, Texas, and are employed as Customs Air Officers and Aircraft Pilots. The plaintiffs seek overtime compensation which, they claim, defendant has denied them in violation of the Fair Labor Standards Act of 1938, as amended (29 U.S.C. §§ 201–219) (1976 & Supp. IV 1981). They also seek liquidated damages, interest, attorneys' fees, and court costs.

The action is now before the court on the plaintiffs' motion for summary judgment "as to the legal issue of liability" of the defendant to the plaintiffs, and on the defendant's cross-motion for summary judgment on the issue of liability and motion for partial dismissal of the complaint (formerly denominated a petition) insofar as it asserts claims accruing before September 6, 1977, because of the alleged failure to file the action on such claims within the time prescribed by statute.

The sole issue before the court on the cross-motions for summary judgment is whether the defendant, in applying the provisions of section 7(k) of the Fair Labor Standards Act (29 U.S.C. § 207(k)), erroneously calculated the amount of overtime compensation due the plaintiffs, so that the defendant is liable to the plaintiffs for additional overtime compensation.

The court concludes that there is no genuine issue as to any fact material to the question of liability, and that the defendant is entitled to a judgment as a matter of law.

*The Fair Labor Standards Act and the
1974 Amendments*

The Fair Labor Standards Act of 1938 (the Act) established the Nation's first statutory minimum wage and overtime rate for work in excess of a prescribed maximum number of hours per workweek. The class of employees covered by the Act's minimum wage and maximum hours provisions has steadily expanded. In 1974, Congress made the Federal Government subject to the Act as an employer.[1] The 1974 amendments also added section 7(k) to the Act (29 U.S.C. § 207(k)). Section 7(k) relates to overtime compensation for employees of a public agency engaged in fire protection or law enforcement activities; and, as it originally

---

1. Fair Labor Standards Amendments of 1974, Pub.L. No. 93–259, 88 Stat. 55 (codified in scattered sections of 29 U.S.C.). As amended, the Act includes a "public agency" in the definition of an "employer." 29 U.S.C. § 203(d). A "public agency" means, *inter alia,* "the Government of the United States" and "any agency of the United States (including the United States Postal Service and Postal Rate Commission)." 29 U.S.C. § 203(x). "Employees," including most federal employees (29 U.S.C. § 203(e)(2)), may sue public agencies for violations of the Act. 29 U.S.C. § 216(b).

became effective on January 1, 1975, it provided in pertinent part as follows:

(k) No public agency shall be deemed to have violated subsection (a) of this section with respect to the employment of any employee in fire protection activities or any employee in law enforcement activities * * * if—

(1) in a work period of 28 consecutive days the employee receives for tours of duty which in the aggregate exceed 240 hours; or

(2) in the case of such an employee to whom a work period of at least 7 but less than 28 days applies, in his work period the employee receives for tours of duty which in the aggregate exceed a number of hours which bears the same ratio to the number of consecutive days in his work period as 240 hours bears to 28 days,

compensation at a rate not less than one and one-half times the regular rate at which he is employed.

Effective January 1, 1976, "240 hours" became "232 hours"; and on January 1, 1977, "232 hours" was reduced to "216 hours."

Until 1974, the Wage and Hour Division in the Department of Labor had the sole responsibility for administering the Act. See 29 U.S.C. § 204(a). However, the 1974 amendments provided that the Civil Service Commission (now the Office of Personnel Management) would be responsible for administering the Act with respect to most employees of the United States. In this respect, the Act, as amended, provides in pertinent part as follows:

* * * Notwithstanding any other provision of this chapter, or any other law, the Civil Service Commission is authorized to administer the provisions of this chapter with respect to any individual employed by the United States (other than an individual employed in the Library of Congress, United States Postal Service, Postal Rate Commission, or the Tennessee Valley Authority). * * * [29 U.S.C. § 204(f).]

Pursuant to its statutory authority, the Civil Service Commission issued Federal Personnel Manual (FPM) Letter 551–5, "Instructions for Applying the Fair Labor Standards Act (FLSA) to Federal Employees Engaged in Fire Protection Activities or Law Enforcement Activities," dated January 15, 1975.[2] FPM Letter 551–5 included detailed guidelines for computing overtime pay for law enforcement employees pursuant to section 7(k) of the Act.[3] In implementing its own procedures for complying with the Act, the Customs Service followed the instructions contained in FPM Letter 551–5.

The plaintiffs contend, however, that in two respects the amount of their overtime compensation was not determined in accordance with section 7(k). First, the plaintiffs claim that Customs improperly computed their "regular rate of pay." Second, the plaintiffs argue that they have been paid only one-half times their regular rate of pay for overtime hours, instead of the one and one-half times the regular rate required by section 7(k). As a result of these alleged violations of the Act, the plaintiffs say that they are entitled to additional overtime compensation, and they are suing for it in the present action.

### Regular Rate

Because the Act provides that employees must be compensated for overtime at the rate of one and one-half times their "regular rate," it is necessary to determine an employee's regular rate before computing the amount of overtime compensation due under the Act.

Section 7(e) of the Act defines "regular rate" broadly "to include all remuneration for employment paid to, or on behalf of, the employee," with the exception of certain statutory exclusions. 29 U.S.C. § 207(e).

---

**2.** OPM's overtime pay instructions under the Act are now found at 5 C.F.R. §§ 551.501–.541 (1982) and are consistent with FPM Letter 551–5.

**3.** The parties agree that plaintiffs are law enforcement employees covered by section 7(k) of the Act.

The regular rate is determined "by adding up all includable payments made for all hours of actual work for the week, and then dividing by the total hours of actual work." FPM Letter 551–1, Attachment 5; *see also* 5 C.F.R. § 551.511(a) (1982).

■ The plaintiffs' contention is that the defendant erroneously included, in the determination of the plaintiffs' regular rate, certain premium pay which they received, together with the overtime hours to which the premium pay related, all of which should have been excluded by virtue of section 7(e)(5) of the Act, which provides for the exclusion of:

(5) extra compensation provided by a premium rate paid for certain hours worked by the employee in any day or workweek because such hours are hours worked in excess of eight in a day or in excess of the maximum workweek applicable to such employee under subsection (a) of this section or in excess of the employee's normal working hours or regular working hours, as the case may be * * *. [29 U.S.C. § 207(e)(5).]

The premium pay which the plaintiffs argue should have been excluded (together with the related overtime hours) from the computation of their regular rate is premium pay that the plaintiffs receive pursuant to 5 U.S.C. § 5545(c)(2) (Supp. V 1981). This provision states as follows:

(c) The head of an agency, with the approval of the Office of Personnel Management, may provide that—

* * * * * *

(2) an employee in a position in which the hours of duty cannot be controlled administratively, and which requires substantial amounts of irregular, unscheduled, overtime duty with the employee generally being responsible for recognizing, without supervision, circumstances which require him to remain on duty, shall receive premium pay for this duty on an annual basis instead of premium pay provided by other provisions of this subchapter, ex-

cept for regularly scheduled overtime, night, and Sunday duty, and for holiday duty. Premium pay under this paragraph is determined as an appropriate percentage, not less than 10 percent nor more than 25 percent, of such part of the rate of basic pay for the position as does not exceed the minimum rate of basic pay for GS–10, by taking into consideration the frequency and duration of irregular unscheduled overtime duty required in the position.

The premium pay received pursuant to section 5545(c)(2) for administratively uncontrollable overtime (AUO) is, unlike ordinary overtime compensation, a flat percentage of an employee's annual basic pay. The percentage is based on the average number of hours per week of irregular, unscheduled overtime that a position requires, and the percentage remains fixed, irrespective of the actual number of AUO hours that an employee works in a particular pay period.[4] Thus, for example, an employee who receives premium pay equaling 10 percent of his annual basic pay for an average of 5 hours of AUO per week will receive the same amount of premium pay irrespective of whether he works no hours or 15 hours of AUO in a given week.

The court agrees with the defendant that AUO premium pay does not qualify for the section 7(e)(5) exclusion because it is not a *"premium rate* paid for *certain hours"* (emphasis supplied). FPM Letter 551.5, Attachment 2, states as follows:

Section 7(e) of the FLSA requires inclusion in the "regular rate" of "all remuneration for employment paid to, or on behalf of, the employee" except for certain specific exclusions. Premium pay on an annual basis for regularly scheduled standby duty (5 U.S.C. 5545(c)(1)) and premium pay on an annual basis for administratively uncontrollable work (5 U.S.C. 5545(c)(2)) do *not* qualify as statutory exclusions from the "regular rate" and therefore, they are included in computing an employee's total remuneration. [Emphasis in original.]

---

4. The pertinent OPM regulations are set out in 5 C.F.R. § 550.154(a).

■ The Department of Labor's regulations under the Act define a premium rate as "a rate per hour." 29 C.F.R. § 778.-308(a). To qualify for the section 7(e)(5) exclusion, the regulations state that "the overtime rate must be greater than the regular rate, either a fixed amount per hour or a multiple of the nonovertime rate, such as one and one-third, one and one-half or two times that rate." 29 C.F.R. § 778.-308(b).[5]

■ An agency's interpretation of a statute that it is charged with administering is entitled to "great deference." *Udall v. Tallman,* 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965); *see also Red Lion Broadcasting Co. v. FCC,* 395 U.S. 367, 381, 89 S.Ct. 1794, 1801, 23 L.Ed.2d 371 (1969); *Skidmore v. Swift & Co.,* 323 U.S. 134, 140, 65 S.Ct. 161, 164, 89 L.Ed. 124 (1944). OPM's construction of the Act should not be invalidated unless it is "clearly wrong." *United States v. Shimer,* 367 U.S. 374, 381–82, 81 S.Ct. 1554, 1559–60, 6 L.Ed.2d 908 (1961); *see also Port Authority of St. Paul v. United States,* 193 Ct.Cl. 108, 115, 432 F.2d 455, 459 (1970); *Fix v. United States,* 177 Ct.Cl. 369, 377, 368 F.2d 609, 614 (1966).

■ As stated already, AUO premium pay is not paid at any "rate"; it is neither a "fixed amount per hour" nor a "multiple of the nonovertime rate." Moreover, as defendant notes, AUO pay is not necessarily a "premium rate" under the Act merely because it is designated a type of "premium pay" under title 5. AUO pay is treated very much like basic pay. Not only is it paid in a lump sum, but AUO pay is also computed with basic pay for the purposes of determining civil service retirement benefits for law enforcement employees (5 U.S.C. § 8331(3)(D) (1976)) and the amount of their Federal Employees Group Life Insurance coverage (5 C.F.R. § 870.302(a)).

Equally fatal to plaintiffs' contention that AUO pay qualifies for the section 7(e)(5) exclusion is the fact that it is not paid for "certain hours," but is, on the contrary, a fixed sum paid without regard to the actual number of overtime hours worked in a week. AUO pay is analogous to arrangements in the private sector that provide a fixed sum for fluctuating hours. The Department of Labor's regulations require that, under such arrangements, compensation for work performed during the overtime hours must be included in the regular rate. 29 C.F.R. § 778.310.[6]

This procedure is consistent with the defendant's treatment of plaintiffs' AUO pay and has met with approval from the courts. *E.g., Overnight Motor Transportation Co. v. Missel,* 316 U.S. 572, 575, 580, 62 S.Ct. 1216, 1218, 1221, 86 L.Ed. 1682 (1942); *Yadav v. Coleman Oldsmobile, Inc.,* 538 F.2d 1206, 1207 (5th Cir.1976); *Masters v. Maryland Management Co.,* 493 F.2d 1329, 1333 (4th Cir.1974); *Triple "AAA" Co. v. Wirtz,* 378 F.2d 884, 887 (10th Cir.), *cert. denied,* 389 U.S. 959, 88 S.Ct. 338, 19 L.Ed.2d 364 (1967). Therefore, it is concluded that Customs' inclusion of plaintiffs' AUO pay, and related overtime hours, in the computation of their regular rate was reasonable and consistent with the requirements of the Act.

### Time and a Half

■ Section 7(k) of the Act requires that the plaintiffs receive compensation for overtime at the rate of at least "one and one-half times" their regular rate. Customs has construed this as meaning that when the plaintiffs work overtime, they are to receive as compensation their regular rate plus one-half of their regular rate.

---

5. Although the Department of Labor's regulations are not controlling in deciding the validity of FPM Letter 551.5, they are persuasive, because Congress intended OPM's administration of the Act to be consistent with the Department of Labor's administration of the Act. See H.R.Rep. No. 913, 93d Cong., 2d Sess. 28, *reprinted in* [1974] U.S.Code Cong. & Ad.News 2811, 2837.

6. Plaintiffs allege that defendant credited plaintiffs' AUO pay against statutory overtime compensation due them, but the allegation is not supported by any evidence. Defendant denies the allegation.

The plaintiffs contend that this method of computation is in violation of the Act because it compensates them for overtime at the rate of only one-half times their regular rate. The court disagrees. The plaintiffs are really contending that they are entitled to be compensated for overtime at *two* and one-half times their regular rate.

OPM's method of computing overtime pay for employees engaged in law enforcement activities, as explained in FPM Letter 551–5, begins on the premise that such an employee receives 100 percent of the straight-time compensation for whatever number of hours the employee works during the tour of duty, irrespective of whether the tour involves only the regular number of hours or overtime. Then, if the tour involves overtime, the employee receives *additional* compensation at the rate of 50 percent times the regular rate for hours worked in excess of the statutory maximum (93 hours for a 2-week period). Thus, the employee receives overtime pay at the rate of one and one-half times the regular rate. The court concludes that OPM's interpretation of the time-and-a-half provision complies with the requirements of the Act.

Furthermore, OPM's method is consistent with the Department of Labor's regulations, which provide for overtime compensation at the rate of one-half times the regular rate for certain employees, including employees who, like plaintiffs, receive fixed salaries for fluctuating hours. The Department of Labor's regulations (29 C.F.R. § 778.114) concerning "Fixed salary for fluctuating hours" provide in part as follows:

(a) An employee employed on a salary basis may have hours of work which fluctuate from week to week and the salary may be paid him pursuant to an understanding with his employer that he will receive such fixed amount as straight time pay for whatever hours he is called upon to work in a workweek, whether few or many. Where there is a clear mutual understanding of the parties that the fixed salary is compensation (apart from overtime premiums) for the hours worked each workweek, whatever their number, rather than for working 40 hours or some other fixed weekly work period, such a salary arrangement is permitted by the Act if the amount of the salary is sufficient to provide compensation to the employee at a rate not less than the applicable minimum wage rate for every hour worked in those workweeks in which the number of hours he works is greatest, and if he receives extra compensation, in addition to such salary, for all overtime hours worked at a rate not less than one-half his regular rate of pay. Since the salary in such situation is intended to compensate the employee at straight time rates for whatever hours are worked in the workweek, the regular rate of the employee will vary from week to week and is determined by dividing the number of hours worked in the worksheet into the amount of the salary to obtain the applicable hourly rate for the week. Payment for overtime hours at one-half such rate in addition to the salary satisfies the overtime pay requirement because such hours have already been compensated at the straight time regular rate, under the salary arrangement.[7]

Plaintiffs correctly note that their employment terms are not precisely those contemplated by 29 C.F.R. § 778.114. The plaintiffs must work a minimum of 40 hours per week, and section 7(k) of the Act establishes a statutory maximum. However, the plaintiffs do work fluctuating hours in their tours of duty, for which they receive a fixed salary. Hence, OPM and the Department of Labor have a common rationale for their method of computing time and a half for employees like plaintiffs.

7. *See also Triple "AAA" Co. v. Wirtz,* 378 F.2d 884, 887 (10th Cir.), *cert. denied,* 389 U.S. 959, 88 S.Ct. 338, 19 L.Ed.2d 364 (1967); *Petrlik v. Community Realty Co.,* 347 F.Supp. 638, 642 (D.Md.1972); *Hodgson v. Elm Hill Meats of Ky., Inc.,* 327 F.Supp. 1009, 1016 (D.Ky.1971), *aff'd,* 463 F.2d 1186 (6th Cir.1972).

It appears, therefore, that Customs has properly compensated the plaintiffs for overtime at one and one-half times their regular rate.

### The Statute of Limitations

The previous discussion makes it unnecessary to consider the defendant's motion for partial dismissal insofar as the plaintiffs' claims are for additional overtime compensation because of allegedly erroneous calculations of the amounts due the plaintiffs. Hence, the consideration of the pending motion for partial dismissal is limited to the plaintiffs' claims for liquidated damages because of the alleged failure of the Customs Service to pay, within the time prescribed by statute, amounts of overtime compensation due the plaintiffs and actually paid to them.

The pertinent limitations statute (29 U.S.C. § 255) establishes a 2-year limitations period for violations of the Act, except that a 3-year period is provided for "willful" violations. The defendant contends in its motion for partial dismissal that because the plaintiffs did not allege in their complaint that Customs' violations of the Act were willful, the 2-year limitations period is applicable to plaintiffs' cause of action.

For the portion of the plaintiffs' action based on claims for liquidated damages because of allegedly tardy payment of overtime compensation, it remains undecided whether Customs violated the Act in this respect. Consequently, it would be putting the cart before the horse to decide whether Customs' violations (if any) were willful. Whether the 2-year or the 3-year limitations period ·applies to plaintiffs' cause of action for liquidated damages can be decided if and after the court concludes that Customs violated the Act by paying the plaintiffs their overtime compensation too late.

The plaintiffs' failure to allege a willful violation of the Act is not a sufficient reason to grant the defendant's motion for partial dismissal. As the defendant acknowledges in its brief, if the plaintiffs produce evidence of a willful violation of the Act, then the complaint can be amended to conform to the evidence. *Cities Service Helex, Inc. v. United States,* 211 Ct.Cl. 222, 234 n. 14, 543 F.2d 1306, 1313 n. 14 (1976); *Hess v. United States,* 210 Ct.Cl. 483, 490– 92, 537 F.2d 457, 461–62 (1976), *cert. denied,* 430 U.S. 931, 97 S.Ct. 1551, 51 L.Ed.2d 775 (1977); *Erickson v. United States,* 159 Ct.Cl. 202, 210 & n. 3, 309 F.2d 760, 764 & n. 3 (1962); Claims Court Rule 15(b). It appears that an amendment of the complaint would not prejudice the defendant, as it is already on notice of the plaintiffs' intention to attempt to establish a willful violation, and the issue has been briefed by both parties.

It is appropriate, therefore, to deny the defendant's motion for partial dismissal without prejudice at this time.

### CONCLUSION

The court concludes that there is no genuine issue as to any fact material to the question of the defendant's liability to the plaintiffs because of allegedly erroneous calculations of the amounts of overtime compensation due the plaintiffs under the Fair Labor Standards Act, that the defendant is not liable to the plaintiffs for additional overtime compensation on the ground stated, and that the defendant is entitled to a judgment as a matter of law on such issue.

Accordingly, the plaintiff's motion for summary judgment on the issue referred to in the preceding paragraph is denied, the defendant's cross-motion for summary judgment on such issue is granted, and, upon the disposition of the remainder of the case, the complaint will be dismissed as to all plaintiffs with respect to claims based on the allegedly erroneous calculations.

The defendant's motion for partial dismissal is denied without prejudice.